**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OHIO**

SHARON L. HATCHER, Pro Se       :        CASE NO. 1:20 CV 2508

  Plaintiff,        :

  v.        :        JUDGE:        **FILED**

CUYAHOGA METROPOLITAN        :        **COMPLAINT FOR**        NOV - 6 2020
HOUSING AUTHORITY,        **DAMAGES AND**
          :        **INJUNCTIVE RELIEF**        CLERK, U.S. DISTRICT COURT
  Defendant.        NORTHERN DISTRICT OF OHIO
          :        CLEVELAND
**(Jury Demand Endorsed Hereon)**
          :

          :        JUDGE BARKER

          :        MAG. JUDGE BAUGHMAN

#14460127229

**CIVIL COMPLAINT**

  Plaintiff, Sharon L. Hatcher, *Pro se* brings this action seeking legal and equitable relief pursuant to Section 1 of the Civil Rights Act of 1866, 42 U.S.C. §1981, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a)(1) and (2), and the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §621, *et seq.*, against Cuyahoga Metropolitan Housing Authority for its discrimination practices against her based on gender, race, and age as set forth herein.

**I. JURISDICTION**

  1. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. §1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5(f)(3), as amended by the Civil Rights Act of 1991; 28 U.S.C. §§1331 and 1343(a)(4).

  2.   Plaintiff has satisfied all the procedural and administrative requirements set forth in Section 706 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-5 because she:

1

a.  Filed timely written charge of gender, race and age discrimination;

b.  Received a Notice of Right to Sue from the EEOC dated August 11, 2020; and

c.  This action was filed with this Court within 90 days of receipt of that Notice.

## II. THE PARTIES

3.  Sharon L. Hatcher is an African-American individual citizen who resides at 5747 Daniel Drive, Bedford Heights, OH 44146.

4.  Defendant Cuyahoga Metropolitan Housing Authority (hereafter "CMHA"), a political subdivision of the State of Ohio, owns and manages property and administers rent subsidy programs to low-income individuals and families with its principal place of business at 8200 Kinsman Road, Cleveland, Ohio.

## III. FACTUAL BACKGROUND

5.  Hatcher is a former employee of CMHA.

6.  At the time of employment, Hatcher was age 57.

7.  On or about September 18, 2019 Hatcher applied with Defendant for the posted position of Plumber.

8.  According to Defendant's published criteria the position:

[R]equires extensive experience and knowledge in the maintenance, installation, and repair of various types of plumbing equipment. Duties include but are not limited to installing and maintaining all plumbing fixtures and associated equipment at the Authority's units and other plumbing used for water distribution, such as wastewater disposal and gas equipment throughout all agency's facilities. Key elements of this position required 5-years of Plumbing Experience and a High School or Equivalent Education and Driver License.

9.  Hatcher was well qualified for the Plumber position because she possessed over ten years of experience as a plumber and technical experience and also experience gained from facilities maintenance positions. Hatcher possessed knowledge of Plumbing experience in the

2

same areas Defendant was seeking.

10.     Hatcher holds a Plumbing License with the State of Ohio Construction Industry Licensing Board.

11.     Hatcher possess two associate degrees from Cuyahoga Community College one in Automotive Technology and the second degree in General Studies, a bachelor's degree from Franklin University with a dual major in Business Administration and Technical Management, and also an executive master's degree from Georgetown University in Leadership.

12.     As a licensed plumber Hatcher previously worked in single and multi-residential settings maintaining and repairing and installing plumbing systems and equipment.

13.     Hatcher had been employed as a Plant Maintenance Technician for Cleveland Clinic Health Systems and was responsible for executing facilities and plant maintenance tasks for a one and half million-square foot, 469 bed full service acute hospital.

14.     Hatcher was a business owner of a plumbing company known as Aquaduct Sewer Company with 21 employees consisting of plumbers, plumbing apprentices, general laborers, and office personnel.

15.     Hatcher is the business owner of Best Kept Buildings & Asset Management and was self-employed working on a part-time basis as a Plumber when she applied for the Plumber position with CMHA.

16.     On or about September 18, 2019, Hatcher submitted her résumé in response to the Defendant's job posting for Plumber through Indeed.com an online job site.

17.     Nothing on Hatcher's résumé listed her gender, race or age.

18.     Defendant apparently believed Hatcher was well qualified for the position because Defendant's Talent Acquisition Manager, Lonnie Brown contacted Hatcher via telephone

3

inviting her to an in-person job interview on the same day Hatcher submitted her resume through Indeed.com.

19.     Brown sent Hatcher an email on September 18, 2019, confirming an in-person interview for the position of Plumber.

20.     The email provided the address of 8200 Kinsman Road, Cleveland, OH 44104 as the location for the interview.

21.     On or about September 19, 2019, Defendant's Director of Property Maintenance, Ronald King and Brown conducted the in-person interview of Hatcher.

22.     During the interview, Hatcher was asked only questions pertaining to her plumbing knowledge and her plumbing skills.

23.     King informed Hatcher, the Defendant had recently been in the news due to the numerous plumbing issues and they needed someone with Hatcher's expertise.

24.     King and Brown informed Hatcher if she is hired, she would be assigned to the Property Maintenance department.

25.     On September 19, 2019, Brown called Hatcher instructing her to complete Defendant's online employment application.

26.     Hatcher completed and submitted the employment application through Defendant's online application.

27.     Nothing on Hatcher's employment application Hatcher listed her gender, race or age.

28.     On or about September 20, 2019, Brown called Hatcher requesting she complete the required pre-employment screening at St. Vincent Charity Occupational Health.

29.     On September 20, 2019, Hatcher completed the required pre-employment

screening at St. Vincent Charity Occupational Health.

30.    On or about October 1, 1029, Brown called Hatcher to offer her the position of Plumber. Hatcher accepted the position.

31.    Brown instructed Hatcher to come to the main campus to sign a job offer letter for the position of Plumber

32.    On or about October 2, 2019, Hatcher met with Brown at the main campus and Brown presented Hatcher with a job offer letter.

33.    The job offer letter reflected the job title of "Service Person V." Hatcher expressed her concerns to Brown because of the job title.

34.    Brown informed Hatcher the job title of Service Person V was an internal job title for payroll purposes only and the job title did not affect. She was being hired as a plumber.

35.    Based on the explanation provided by Brown, Hatcher signed the job offer letter and a start date of October 7, 2019 was agreed upon by Hatcher and Brown.

36.    On or about October 7, 2019, Hatcher met with Brown at the main campus.

37.    Brown informed Hatcher she was being assigned to Carver Park Estates ("CPE"), located at 2366 East 55th Street, Cleveland, Ohio. This the address for the main office.

38.    Brown instructed Hatcher to report to the main office.

39.    Hatcher arrived at CPE and met with Antonio Kennibrew, Maintenance Supervisor.

40.    Kennibrew informed Hatcher he too was new to CPE and he was not expecting her arrival.

41.    Hatcher inquired about tools and a company vehicle. Kennibrew informed Hatcher she would need to use her own tools and drive her personal vehicle or walk to each

assignment.

42.     Hatcher attended a mandatory meeting along with the entire staff of CPE.

43.     The meeting was held at CMHA's Outhwaite Homes inside an area known as the Louis Stokes Museum, located at 2453 East 43rd Street, Cleveland, Ohio.

44.     The meeting was facilitated by Aaron Cooper, Director of Asset Management and Sharhonda Greer, Deputy Director, Asset Management Operations, Southeast was also in attendance.

45.     Cooper informed the staff of the new AMP Leader, Darlene Sledge.

46.     Cooper expressed concerns about the high number of complaints from tenants about the lack of maintenance.

47.     Greer spoke briefly. She informed the staff they could no longer lock the main office for lunch.

48.     During the meeting Hatcher asked Cooper about the issuance of tools she was promised when hired and use a company vehicle. Cooper told Hatcher he would check into it.

49.     Hatcher never heard back from Cooper.

50.     While assigned to CPE, Hatcher was issued one work order at a time in paper form by Kennnibrew.

51.     When Hatcher would attempt to contact Kennibrew via his cell phone, he never answered; Hatcher would leave a voicemail message.

52.     Hatcher would walk or drive her personal vehicle to the main office to obtain another assignment.

53.     Male maintenance workers utilized a cell phone with a work order application to receive assignments and they drove vehicles, both issued and owned by the Defendant.

6

54.     Hatcher was assigned work orders with due dates for the months of July and August that were labeled as "Priority."

55.     Hatcher was assigned work orders male maintenance workers refused to complete.

56.     Kennibrew informed Hatcher she would be required to pick-up trash as part of her daily job duties.

57.     Hatcher never received tools and was not given access Defendant owned vehicles; only male maintenance workers had access to Defendant vehicles.

58.     Hatcher emailed Brown requesting a meeting with Brown and King to discuss the misunderstanding of her role and her responsibilities as a Plumber, the method of communicating with CMHA staff, and the use of a company vehicle and company tools.

59.     On or about October 8, 2019, Hatcher met with Brown at the main campus.

60.     Hatcher expressed her concerns about the working conditions and picking up trash daily as part of her job duties. She reminded Brown she had applied for and accepted the position of Plumber.

61.     Brown informed Hatcher CMHA was trying something new and the AMP needed to adjust to the change.

62.     Brown invited Betsy McCafferty, Director of Human Resources; Cooper; and Greer to meet with Hatcher; they met with her individually.

63.     Hatcher arrived at CPE approximately 9:30am. She was assigned numerous work orders with due dates for the months of July and August that were labeled as "Priority."

64.     Hatcher was assigned work orders male maintenance workers refused because the units were invested with roaches.

7

65.     Hatcher was assigned a work order which required her to "suit-up" in a full-body one-piece Tyvek jumpsuit (personal protective equipment) and utilize four (4) cans of ZenKill IV multi-purpose insect spray and place heavy-duty garbage bags on the floor to perform work in the unit.

66.     On October 9, 2019, Hatcher returned to CPE with the expectation she was working in the capacity of Plumber.

67.     Hatcher would walk to or drive her personal vehicle to the rental office to submit completed assignments and to obtain a new work assignment.

68.     Hatcher complained to Kennibrew about the working conditions and his assignment of only one work order at time. She was assigned numerous work orders after complaining.

69.     Hatcher never received tools and never gained access to any of CMHA's vehicles while assigned to CPE.

70.     Hatcher was the only maintenance employee without access to a CMHA owned vehicle or CMHA cell phone.

71.     On or about October 11, 2019, Brown contacted Hatcher and instructed her to report to the main campus on October 14, 2019.

72.     On October 14th, Hatcher met with Brown at the main campus.

73.     Brown informed Hatcher she had been reassigned to the Far West AMP located at 17800 Parkmount Avenue, Cleveland, Ohio.

74.     Brown escorted Hatcher to IT were Hatcher was issued a CMHA cell phone.

75.     The cell phone contained numerous applications (Apps), one particular App was for the Defendant's work order system.

8

76.     Hatcher arrived at the Far West AMP and met separately with Ms. Nancy Oliveras-Eakins, AMP Leader and Nigel Chung, Maintenance Supervisor.

77.     Hatcher also met with Eakins and Chung collectively.

78.     Eakins and Chung explained to Hatcher has a Service Person V she would be required to pick-up trash and shovel snow.

79.     Hatcher explained to Eakins and Chung she was hired as a Plumber and her responsibilities included plumbing related tasks and not trash pick-up and shoveling snow.

80.     On or about October 15, 2019, Hatcher met with Brown at the main campus.

81.     Hatcher expressed her concerns to Brown regarding the daily duties of trash pick-up trash and shoveling snow.

82.     Hatcher complained to Brown about the "bait and switch" tactic used to hire her."

83.     Hatcher reminded Brown she applied the position of plumber and she was unwilling perform trash pick-up or shovel snow.

84.     Brown informed Hatcher CMHA was rolling out a new program, and the properties needed time to become acclimated with the program.

85.     Brown assured Hatcher she would speak with Oliveras and Chung explain my role as a plumber and expalin the new program.

86.     Hatcher never received confirmation Brown spoke with either Eakins or Chung about her role as a plumber or the new program.

87.     On or about October 16, 2019, Chung informed Hatcher she was being assigned to the Bellaire Garden (buildings A and B) property, located at 12000 Wanda Avenue, Cleveland, Ohio.

88.     Chung introduced Hatcher to Johanna (last name unknown) the administrative

9

assistant at Bellaire Garden-B.

89.   Johnna issued Hatcher master keys for the property. The keys belonged to the maintenance person (a male possibly named Curtis) who was on medical leave indefinitely.

90.   Chung assigned Hatcher a task to locate a major leak in a first-floor unit.

91.   Chung informed Hatcher the ceiling had collapsed for third time from a water leak and the source of the water was unknown.

92.   Chung instructed Hatcher to stay with it until she could pinpoint the source of the water.

93.   Hatcher located the leak and notified Chung. Hatcher did not have access to the proper tools or material to make the repair.

94.   On or about October 17, 2019, two white males arrived at the property and repaired the leak.

95.   The two males informed Hatcher they were plumbers assigned to Property Maintenance and they were earning top wages as plumbers.

96.   Hatcher was also assigned work orders via the work order app that she successfully completed.

97.   On October 18, 2019, Hatcher attended orientation at the main campus.

98.   Hatcher was issued numerous items including the labor agreement booklet for Local 1355, AFSCME, Ohio Council 8, AFL-CIO).

99.   Hatcher met with Melissa Floyd, union steward for local 1355.

100.   Floyd informed Hatcher her position was a labor union position.

101.   Hatcher explained to Floyd her concerns with the work assignments, using her personal tools and vehicle, and she believed CMHA had baited and switched the job position.

102.    Floyd informed Hatcher she could not file a grievance until after she completed the required probationary period.

103.    On or about October 21, 2019, Hatcher reported for work at the Bellaire Garden-B.

104.    Chung took Hatcher on a tour of the exterior of the property.

105.    Chung informed Hatcher her daily duties was picking-up trash. He also informed her the maintenance guys were complaining she was not picking-up trash.

106.    On or about October 21, 2019, Hatcher called Marquez Brown (Marquez), Labor Representative for Local 1355. She left Marquez a message with the receptionist.

107.    Marquez returned Hatcher's call.

108.    Hatcher expressed her concerns about the job title and job responsibilities, and her treatment by male maintenance employee.

109.    Hatcher informed Marquez she had been hired as a Plumber and not a Service Person V.

110.    Hatcher expressed her concerns about CHMA's bait and switch tactic, and the unfair treatment she was experiencing as a 57-year old African-American female.

111.    Marquez told Hatcher he would check into her concerns.

112.    Hatcher never heard back from Marquez.

113.    On or about October 21st, Hatcher emailed Brown to express concerns the job title and job responsibilities, the bait and switch tactic and to inform Brown she had spoken with Marquez.

114.    Hatcher included Marquez on the email to Brown.

115.    On or about October 22, 2019, Hatcher met with Brown at the main campus to

11

discuss her concerns with the continuous issues of her job title, the bait and switch tactic, the job responsibilities, utilization of her personal vehicle and personal tools.

116.    Brown again informed Hatcher CHMA was rolling out a new program and the properties needed time to get adjusted.

117.    Hatcher informed Brown she did not want to be CHMA's guinea pig for their new program.

118.    Hatcher informed Brown she believed she was being treated differently because of her age and because she is an African-American female.

119.    On or about October 23, 2019, Chung hand delivered an Interoffice Memorandum to Hatcher with the following subject, "Pre-Disciplinary Conference."

120.    The memorandum required Hatcher to report to main campus at 11:00am.

121.    Hatcher arrived at the main campus for the pre-disciplinary conference.

122.    In attendance at the pre-disciplinary conference were Cedra Westbrook, Employee Relations Manager; Eakins, and Floyd.

123.    Westbrook facilitated the pre-disciplinary conference.

124.    Eakins shared her views of Hatcher's work performance beginning with Hatcher's first day on the job at CPE.

125.    Westbrook shared an email with Floyd. The email was not shown to Hatcher.

126.    Westbrook informed Hatcher she was hired as a Service Person V and her daily duties included trash pick-up and snow removal.

127.    Hatcher informed the attendees she applied for the position of Plumber and not for the position of Service Person V, and according to the job posting, she would be performing plumbing duties only.

12

128.    Hatcher informed the attendees, CMHA used a bait and switch tactic to fill the position and CHMA's treatment of her was discriminatory.

129.    Hatcher informed the attendees she would not pick-up trash or shovel snow because she did not apply for a job that required her to do so.

130.    Westbrook immediately left the room and returned with a letter.

131.    Westbrook informed Hatcher she was being placed on paid administrative leave; Westbrook handed Hatcher the letter.

132.    Westbrook requested Hatcher surrender her employee identification badge, company cell phone and company issued keys. Hatcher obliged the request.

133.    On or about October 24, 2019, Hatcher received correspondence sent via USPS Priority Mail of her termination of employment effective October 23, 2019.

134.    On or about October 31, 2019, Hatcher submitted to Defendant a letter of rebuttal in response to the pre-disciplinary conference and her termination.

135.    Hatcher's rebuttal letter addressed the following:

    a.    the unfairness of the proceedings;

    b.    Westbrook's to failure to aim for truth and accuracy in fact-finding;

    c.    Westbrook's prejudice against Hatcher;

    d.    CMHA's violation of Hatcher's right to equal employment pursuant to Section 1 of the Civil Rights Act of 1866, 42 U.S.C. §1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a)(1), and R.C. 4112.02(A); and

    e.    The actions of CMHA caused and continues to cause undue stress and mental and emotional distress, which commenced on October 7, 2019.

13

136.    On January 13, 2020, Hatcher filed a Charge of Discrimination with the Ohio Civil Rights Commission

137.    Hatcher received a right to sue letter from the United States Equal Employment Opportunity Commission dated August 11, 2020.

138.    Defendant falsely advertised for the position of Plumber and accepted Hatcher's employment application for the position of Plumber misleading Hatcher to believe she was applying for the position of Plumber.

139.    Defendant's actions subjected her to gender, race and age discrimination.

140.    Defendant moved Hatcher through the hiring process with false pretenses misleading Hatcher to believe she would be hire and would work solely in the capacity of Plumber.

141.    Defendant's actions subjected her to gender, race and age discrimination.

142.    Defendant "baited and switched" the position of Plumber to Service Person V after Hatcher successfully completed the pre-employment screening and background check.

143.    Defendant's actions subjected her to gender, race and age discrimination.

144.    Defendant made Hatcher's work conditions hostile and intolerable which subjected her to gender, race and age discrimination.

145.    Defendant treated Hatcher similarly situated male employees.

146.    Defendant paid Hatcher a lesser hourly rate than males in the position of Plumber or Service Person V.

## Count I
## 42 U.S.C. §1981

147.    Plaintiff incorporates by reference the allegations in Paragraphs 1 to 146 as if

14

fully restated herein.

148. Throughout her employment, Hatcher was fully competent to perform her essential job duties as a highly skilled Plumber.

149. Defendant treated Hatcher differently than similarly situated white male employees in the position of Plumber and the position of Service Person V although she was more qualified, and therefore deprived her of the same right to make and enforce contracts as is enjoyed by white citizens, in violation of the Civil Rights Act of 1866, 42 U.S.C. §1981.

150. Defendant "baited and switched" the position of Plumber to Service Person V after Hatcher successfully completed the pre-employment screening, background check, and tentatively accepted the position during a telephone conversation with Brown. Therefore, Defendant deprived her of the same right to make and enforce contracts as is enjoyed by white citizens, in violation of the Civil Rights Act of 1866, 42 U.S.C. §1981.

151. Defendant's treatment of Hatcher and subsequent termination of her employment was undertaken with reckless indifference to Hatcher's federally protected right to make and enforce contracts irrespective of her race.

152. Upon information and belief, Hatcher's job duties are currently being performed by a younger male.

153. As a direct and proximate result of Defendant's treatment of Hatcher and subsequent termination of her employment, and its discriminatory treatment, Hatcher suffered the following injuries:

      a. Great mental anguish and emotional strain;

      b. Loss of income and benefits; and

      c. Humiliation and inconvenience.

WHEREFORE, Plaintiff demands judgment against Defendant pursuant to 42 U.S.C. §1981 as follows:

    a.    That Defendants be permanently enjoined from discriminating against Hatcher or retaliating against her because of her race or because she opposed race discrimination;

    b.    That Defendants be required to reinstate Hatcher and to pay her the full value of wages and benefits she would have received had it not been for Defendant's illegal treatment, with interest thereon;

    c.    That Hatcher be awarded compensatory and punitive damages in an amount to be determined at trial;

    d.    That Hatcher be awarded against Defendants the costs and expenses of this litigation, and a reasonable attorney's fee; and

    e.    That Hatcher be awarded such further relief as this Court deems to be just and proper.

    f.    Court deems to be just and proper.

### Count II
### Title VII
### Race and Gender Discrimination

154. Plaintiff incorporates by reference the allegations in Paragraphs 1 to 153, as if fully restated herein.

155. Throughout her employment, Hatcher was fully competent to perform her essential job duties as a highly skilled Plumber.

156. At all times relevant during her employment, Hatcher as an African-American, was a member of a statutorily-protected class under 42 U.S.C. § 2000e-2(a).

157. Defendant treated Hatcher differently than similarly situated male employees because of her race and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

16

§2000e-2, *et seq.*

158.  Upon information and belief, Hatcher's job duties are currently being performed by a younger male.

159.  Defendant's treatment of Hatcher because of her race and sex was intentional and taken with reckless indifference to Hatcher's federally protected right to privileges of employment because she is an African American and a woman in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, *et seq.*

160.  As a direct and proximate result of Defendant's actions, Hatcher was deprived of employment and suffered severe injuries and damages, including, but not limited to:

   a.  Mental anguish;

   b.  Denial of social pleasures and enjoyment;

   c.  Embarrassment, humiliation and mortification;

   d.  Aggravation of current financial obligations;

   e.  Punitive damages; and

   f.  Any and all injuries or damages learned throughout the course of discovery.

WHEREFORE, Hatcher demands judgment against Defendant for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 42 U.S.C. §2000e-2(a)., and compensatory and punitive, plus costs and attorney fees, and Hatcher be awarded all other legal and equitable relief to which she may be entitled.

### Count III
### 29 U.S.C. § 621 ET SEQ.
### Age Discrimination

161. Plaintiff incorporates by reference the allegations in Paragraphs 1 to 160, as if

fully restated herein.

162. Throughout her employment, Hatcher was fully competent to perform her essential job duties as a highly skilled Plumber.

163. At all times relevant during her employment, Hatcher was a member of a statutorily-protected class under 29 U.S.C. § 631(a).

164. Defendant treated Hatcher differently from other similarly situated male employees based on her age.

165. Upon information and belief, Hatcher's job duties are currently being performed by a younger individual.

166. Defendant violated 29 U.S.C. § 621, *et seq.* and 29 U.S.C. § 623(a) by discriminating against Hatcher because of her age.

167. As a direct and proximate result of the Defendant's actions, Hatcher was deprived of employment, has suffered and will continue to suffer severe injuries and damages, including, but not limited to:

  a. Mental anguish;

  b. Denial of social pleasures and enjoyment;

  c. Embarrassment, humiliation and mortification;

  d. Aggravation of current financial obligations;

  e. Punitive damages; and

  f. Any and all injuries or damages learned throughout the course of discovery.

WHEREFORE, Hatcher demands judgment against Defendant for violation of the Age Discrimination in Employment Act of 1967, as Amended" (ADEA), 29 U.S.C. § 621 et seq., and

29 U.S.C. § 623(a), and compensatory damages, punitive damages, plus costs and attorney fees, and Hatcher be awarded all other legal and equitable relief to which she may be entitled.

### Count IV
### 29 U.S.C. § 621 ET SEQ.
### Wrongful Termination Based On Age Discrimination

168.   Plaintiff incorporates by reference the allegations in Paragraphs 1 to 167, as if fully restated herein.

169.   Throughout her employment, Hatcher was fully competent to perform her essential job duties as a highly skilled Plumber.

170.   At all times relevant during her employment, Hatcher was a member of a statutorily-protected class under 29 U.S.C. § 631(a).

171.   Defendant treated Hatcher differently from other similarly situated male employees based on her age.

172.   Upon information and belief, Hatcher's job duties are currently being performed by a younger individual.

173.   Defendant violated 29 U.S.C. § 621, *et seq.* and 29 U.S.C. § 623(a) by discriminating and Hatcher and terminating her based on her age.

174.   As a direct and proximate result of the Defendant's actions, Hatcher was deprived of employment, has suffered and will continue to suffer severe injuries and damages, including, but not limited to:

> a. Mental anguish;
>
> b. Denial of social pleasures and enjoyment;
>
> c. Embarrassment, humiliation and mortification;
>
> d. Aggravation of current financial obligations;

19

e. Punitive damages; and

f. Any and all injuries or damages learned throughout the course of discovery.

WHEREFORE, Hatcher demands judgment against Defendant for violation of the Age Discrimination in Employment Act of 1967, as Amended" (ADEA), 29 U.S.C. § 621 et seq., and 29 U.S.C. § 623(a), and compensatory and punitive damages, plus costs and attorney fees, and Hatcher be awarded all other legal and equitable relief to which she may be entitled.

### Count V
### Title VII
### Wrongful Termination Based On Race and Gender Discrimination

175. Plaintiff incorporates by reference the allegations in Paragraphs 1 to 144, as if fully restated herein.

176. Throughout her employment, Hatcher was fully competent to perform her essential job duties as a highly skilled Plumber.

177. At all times relevant during her employment, Hatcher as an African-American, was a member of a statutorily-protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, *et seq.*

178. Defendant treated Hatcher differently from other similarly situated male employees based on her race, African-American and her gender, female.

179. Upon information and belief, Hatcher's job duties are currently being performed by a younger individual.

180. Defendant violated Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. §2000e, *et seq.* by discriminating against Hatcher and terminating her based on her race, African-

American and her gender, female.

181. As a direct and proximate result of the Defendant's actions, Hatcher was deprived of employment, has suffered and will continue to suffer severe injuries and damages, including, but not limited to:

        a. Mental anguish;

        b. Denial of social pleasures and enjoyment;

        c. Embarrassment, humiliation and mortification;

        d. Aggravation of current financial obligations;

        e. Punitive damages; and

        f. Any and all injuries or damages learned throughout the course of discovery.

WHEREFORE, Hatcher demands judgment against Defendant for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.,* and compensatory and punitive damages, plus costs and attorney fees, and Hatcher be awarded all other legal and equitable relief to which she may be entitled.

## PRAYER FOR RELIEF

Plaintiff Sharon Hatcher respectfully requests that this Court enter judgment in her favor and against Defendant Cuyahoga Metropolitan Housing Authority, awarding compensatory and consequential damages, costs, and attorneys' fees against the Defendant, along with punitive damages as well as any other relief this Court deems appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues, claims, actions, and defenses in this case.

Respectfully submitted,

**Sharon Hatcher**, *Pro se*
5747 Daniel Drive
Bedford Heights, OH
44146
(216) 203-2393

22